UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
JIAN HUA LI,                                          :
                                                      :
                              Plaintiff,              :         **MEMORANDUM & ORDER**
                                                      :
                        -against-                     :         16-CV-6722 (PK)
                                                      :
CHANG LUNG GROUP INC., and                            :
TOMMY ZHOU,                                            :
                                                      :
                              Defendants.              :
                                                      ::
------------------------------------------------------------- X


**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Jian Hua Li[1] ("Plaintiff") brought this action against Chang Lung Group Inc.

("Chang Lung") and its owner Tommy Zhou, alleging various violations of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190 and 650 *et seq.*,

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* (*See* Am. Compl.,

Dkt. 15.)

Before the Court is Plaintiff's Motion for Default Judgment against Chang Lung ("Motion")

(Dkt. 32.) For the reasons stated herein, the Motion is granted and damages awarded to Plaintiff.

## BACKGROUND

**I.        Procedural Background**

Plaintiff filed the Complaint on December 5, 2016 (Dkt. 1) and the Amended Complaint on

July 5, 2017. (Dkt. 15.) Chang Lung was served with the Amended Complaint through the New

York Secretary of State on July 13, 2017. (Dkt. 16.)

---

[1] The action was brought by Plaintiff individually and on behalf of other similarly situated plaintiffs.
However, Plaintiff has moved for default judgment individually only. (*See* Dkt. 32-1.)

Defendant Zhou appeared *pro se*, but Defendant Chang Lung did not make an appearance through counsel.

Plaintiff filed the Motion on March 30, 2018. (Dkt. 32.) The Court deferred ruling on the Motion until completion of the trial against Zhou.

A jury trial of Plaintiff's claims against Zhou took place on October 15 and 16, 2019, resulting in judgment against Zhou on Plaintiff's NYLL wage statement and wage notice claims pursuant to NYLL §§ 195(1), (3). The jury found Zhou not liable on all other claims. (Dkt. 55; 63; 64; *see* Minute Entries dated Oct. 15, 2019 and Oct. 16, 2019.)

## II.     Factual Background

The facts stated herein are derived from the Amended Complaint, as well as the witness testimony at trial, where appropriate. Plaintiff requested a separate inquest in order to determine damages for the Motion, but the Court finds an inquest unnecessary because testimony at trial provided the information the Court would have sought at an inquest. *See, e.g., Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 WL 1251102, at *2 (E.D.N.Y. Apr. 5, 2017). To the extent there is a conflict between a witness' testimony at trial and statements in affidavits or allegations in the Amended Complaint, the Court gives the trial testimony more weight. *See, e.g., United States v. James*, No. 10-CR-1293 (RPP), 2011 WL 6306721, at *7 (S.D.N.Y. Dec. 16, 2011), *aff'd*, 520 F. App'x 41 (2d Cir. 2013) (in general, live testimony given more weight than sworn statements contained in a declaration); *United States v. Rico*, No. (S1) 18-CR.-661 (PGG), 2019 WL 4014826, at *9 (S.D.N.Y. Aug. 26, 2019) (allegations in declarations, not tested by cross-examination, given less weight than live testimony at hearing) (citing cases). The Court disregards any evidence presented by Zhou at trial, because Zhou is not authorized to present evidence on behalf of a defaulting corporate party. *See Khurana*, 2017 WL 1251102, at *2 (quoting *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006)).

Chang Lung is a corporation organized under New York state law, which operated a wholesale seafood distribution business at 4425 First Avenue, Brooklyn, New York, 11232. (Am. Compl. ¶ 17; Phillip H. Kim's Declaration in Support of Motion for Default Judgment ("Kim Decl.") ¶ 4, Dkt. 32-3.) Zhou was the owner of Chang Lung. (Am. Compl. ¶ 9; Oct. 15, 2019 Trial Transcript, ("Trial Tr.") at 19:9-15, 75:21-22, 76:1-2.) Chang Lung discontinued its operations when Zhou went to prison in November 2017 for illegally trafficking in glass eels in contravention of the Lacey Act, 16 U.S.C. §§ 3371 *et seq.* (Trial Tr. at 70:23-71:1, 75:21-25.)

Plaintiff was employed by Chang Lung as a deliveryman and warehouse worker from July 7, 2016 until September 28, 2016. (Am. Compl. ¶¶ 7, 17; Trial Tr. at 21:1-4, 25:7-8; Jian Hua Li's Declaration in Support of Second Motion for Default Judgment ("Li Decl.") ¶ 2.) In his interview before accepting the position, Zhou told Plaintiff that his schedule would be five or six days per week, 9:00 a.m. to 5:00 p.m., with a base pay of $1,600 per month. (Trial Tr. at 20:16-19.) Plaintiff's duties included picking up live seafood from New York City's John F. Kennedy Airport, bringing it to Chang Lung's warehouse, weighing it, placing it in tanks, and making deliveries to stores and restaurants in New York City. (Am. Compl. ¶ 18; Trial Tr. at 21:8-14.) At the time of the Amended Complaint, Chang Lung had gross revenues in excess of $500,000 and derived substantial revenues from interstate commerce, receiving tens of thousands of pounds of seafood, including lobster and eel, from Canada, as well as shipping seafood to Asia. (Am. Compl. ¶¶ 8, 11; Trial Tr. at 31:10-14, 33:4-7.)

Throughout Plaintiff's employment, Plaintiff worked six days per week. (Am. Compl. ¶ 18; Li Decl. ¶ 3; Trial Tr. at 22:5-6.)

Plaintiff's trial testimony regarding the hours he worked differed from his sworn declaration in support of the Motion, and the Amended Complaint. In his declaration, and as alleged in the Amended Complaint, he worked in Chang Lung's warehouse three days a week from 7:00 a.m. until

10:00 a.m., and he made deliveries to stores in New York City from 10:00 a.m. until 6:00 p.m. (Am. Compl. ¶ 18; Li Decl. ¶ 3.) For the other three days, Plaintiff worked from 7:00 a.m. until 9:00 a.m. in storage, and then from 10:00 a.m. until 7:00 p.m. making deliveries. (Am. Compl. ¶ 18; Li Decl. ¶ 3.) One day out of those six days, Plaintiff worked an additional shift in storage overnight between 11:00 p.m. and 4:00 a.m. (Am. Compl. ¶ 18; Li Decl. ¶ 3.)

At trial, Plaintiff testified that he worked from 8:30 a.m. until generally 6:00 p.m. (Trial Tr. at 21:6-7, 22:25-23:1.) After the first week, Plaintiff then began work at 7:00 a.m. two or three days per week in order to make earlier trips to the airport. (*Id.* at 21:17-20.) He testified that sometimes he had to go pick up merchandise at the airport in the evenings, around 8:00, 9:00, or 10:00 p.m. for three or four hours. (*Id.* at 23:3-5, 13-16.) He made these evening airport trips two or three days per week. (*Id.* at 24:2-5.)

With regard to the amount that Plaintiff was paid, his trial testimony also differed from his sworn declaration and the Amended Complaint. According to Plaintiff's declaration and the Amended Complaint, Chang Lung was supposed to have paid Plaintiff a monthly salary of $1,600, but he was only paid a total of $2,600 throughout his employment, consisting of $1,300 for each of the first two months. (Am. Compl. ¶ 19; Li Decl. ¶ 4.)

At trial, Plaintiff testified that he was paid a monthly rate of $1,600 before taxes in the months of July and August 2016 (with an after-tax amount of a little more than $1100 at the end of July 2016, based on working only part of the month, and a "little bit over" $1,400 at the end of August 2016). (Trial Tr. at 25:9-18, 47:20-24, 48:24-49:2.)[2] Plaintiff was not paid for his work during the month of September 2016. (Am. Compl. ¶ 19; Li Decl. ¶ 4; Trial Tr. at 20:16-19, 25:19-20.) He testified that he was paid in cash at the end of each month. (Trial Tr. at 24:21-25:2.)

---

[2] Plaintiff testified at trial that he was not sure whether his attorneys made a mistake in the Amended Complaint regarding the amount of pay he received per month. (Trial Tr. at 45:15-17.)

Plaintiff testified that although he thought the $1,600 monthly salary was "a little low," Zhou told him that he would receive a year-end bonus to compensate for the lower monthly salary. (Trial Tr. at 33:11-15, 46:14-19.) Plaintiff testified that he was not originally planning to work at Chang Lung for very long, but he decided to give it a try. (*Id.* at 46:19-21.) His previous employer paid him $9.00 per hour, but Plaintiff quit that job because the employer reneged on his promise to increase Plaintiff's salary to $10.00 per hour. (*Id.* at 102:10-13.)

Throughout Plaintiff's employment, Chang Lung did not provide him with a written wage notice or accurate wage statements. (Am. Compl. ¶¶ 25, 26; Li Decl. ¶¶ 8, 9; Trial Tr. at 33:8-10.)

Zhou directed "racial slurs" at Plaintiff, and Plaintiff felt discriminated against. (Trial Tr. at 26:21-22, 28:13-14.) On a daily basis, Zhou "insulted and ridiculed," "verbally attacked" and "cursed at" Plaintiff, for example, by calling him, "Chinese Rubbish," "Chinese Junk," "Dick Head," and "Mother Fucker". (Am. Compl. ¶ 31; Li Decl. ¶ 5; Trial Tr. at 26:17-20, 28:5-15.)

Plaintiff testified that Zhou criticized him because he was a new employee and not aware of Zhou's schemes to defraud Chang Lung's suppliers and customers. (Trial Tr. at 26:17-27:25, 28:1-4) ("So he would just keep on cursing me. Since I was new, I didn't know what kind of scheme or things [Zhou] was into. So supposedly I did things wrong and he would keep cursing at me.") Zhou also verbally insulted Plaintiff when he was dissatisfied with Plaintiff's work. (Trial Tr. at 28:11-12.) Plaintiff testified that there were two Hispanic workers at the company, but Zhou "never abuse[d] them in that way." (*Id.* at 28:13-16.) Zhou also occasionally verbally abused other Chinese employees, but Plaintiff testified that the abuse was mostly directed against him. "I figure it's because I didn't understand and participate in his schemes. That's the reason why." (*Id.* at 28:17-21.) When asked if Zhou singled him out in any other way or treated him differently from other employees, Plaintiff testified, "Well, he always curse at me very severely. He also does it to the other people, the other employees, but not as severe." (*Id.* at 28:22-29:1.) Plaintiff experienced

"headaches, chest pain, diarrhea, anxiety, agitation, and loss of sleep" "due to" Zhou's comments. (Li Decl. ¶ 7.)

Plaintiff was terminated on September 28, 2016 after Zhou asked him to pay half the amount owed on parking tickets Plaintiff received while delivering seafood. When Plaintiff refused, Zhou fired him. (Trial Tr. at 29:2-25.)

## DISCUSSION

### I.  Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Id; see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as would failure of a corporation to appear through licensed counsel. *See, e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).

A default "constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208. The Court must ensure that (1) jurisdictional requirements are satisfied, see *Mickalis*, 645 F.3d at 125-27; (2) the plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See GuideOne Specialty Mut. Ins.* Co., 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *4 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129. The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence, detailed affidavits, or testimony at an inquest. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 346 (E.D.N.Y. 2010). The amount of damages, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83-84 (E.D.N.Y. 2012). When a plaintiff claims FLSA and NYLL violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan*, 897 F. Supp. 2d at 83.

## II. <u>Jurisdiction</u>

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). The Court may also inquire as to whether it has personal jurisdiction. *See Mickalis*, 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

### A. *Subject Matter Jurisdiction*

This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331. This Court additionally has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367.

### B. Personal Jurisdiction and Service

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015). An individual may be served according to state law where service is made. Fed. R. Civ. P. 4(e)(1). Likewise, a corporation may be served in the same manner for serving an individual as prescribed by Federal Rule of Civil Procedure 4(e)(1) or by delivering a copy of the Summons and Complaint to an officer appointed by law to receive such service. Fed. R. Civ. P. 4(h)(1). Chang Lung was properly served with the Summons and Amended Complaint in accordance with the service requirements of the New York Civil Practice Law & Rules ("C.P.L.R.") through service on the Office of the Secretary of the State of New York. (Dkt. 16.) *See* C.P.L.R. 308(3); *see also* N.Y. Bus. Corp. Law § 306.

### III. Procedural Compliance

Plaintiff filed the following documents in support of the Motion: Notice of Motion (Dkt. 32-1); Memorandum of Law in Support of Plaintiffs' Second Motion for a Default Judgment Against Defendant Chang Lung Group Inc. ("Pl. Mem.") (Dkt. 32-2); declarations and affidavits in support (Dkt. 32-3; 32-5); the Clerk's Certificates of Default (Dkt. 32-8; 32-13); the Amended Complaint (Dkt. 32-4); proof of service of the Complaint and Amended Complaint (Dkt. 32-6; 32-12); and proof of mailing of the Motion to Chang Lung (Dkt. 32-14.) These documents are in substantial compliance with Local Civil Rules 7.1 and 55.2.[3]

---

[3] Although Plaintiff did not submit a proposed order of default judgment with the Motion, the Court will not require its submission.

## IV.  **Liability**

In determining liability, the Court accepts as true the well-pleaded allegations of the complaint, drawing all reasonable inferences in favor of Plaintiff.  *See Finkel*, 577 F.3d at 84; *see also Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158-59.  Under the FLSA, when an employer does not keep "accurate or adequate records of employee hours and wages, plaintiff, in an action to recover wages due employees, carries her burden of proof by producing 'sufficient evidence to show the amount and extent of . . . uncompensated work as a matter of just and reasonable inference.'"  *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 272–73 (E.D.N.Y. 2008) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), *reh'g denied,* 329 U.S. 822 (1946), *superseded by statute on other grounds as stated in Reich v. N.Y. City Transit Auth.,* 45 F.3d 646, 649 (2d Cir. 1995)) (internal brackets omitted).  The burden then shifts to the employer to show that the inference is not reasonable.  *Ramirez,* 568 F. Supp. 2d at 273.  If the employer fails to meet this burden, the Court may award damages reasonably inferred, even if only approximate.  *Id.*  Under the NYLL, the burden is on the employer to prove by a preponderance of the evidence that Plaintiff was properly compensated for the hours he worked.  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6.

Plaintiff claims that Chang Lung is liable for unpaid overtime and minimum wages, spread-of-hours premiums, unpaid agreed-upon wages, statutory violations of both wage notice and statement requirements, liquidated damages under the FLSA and NYLL, race or national origin discrimination and hostile work environment under the NYSHRL and NYCHRL, pre- and post-judgment interest, and attorneys' fees and costs.  (Am. Compl. ¶¶ 1-4, 9, 95, 100, 104-109, *ad damnum* clause.)[4]

---

[4] Although Plaintiff brought a claim for violations of New York General Business Law § 349, he did not address this claim in the Motion, and it is therefore deemed abandoned.  (Am. Compl. ¶¶ 91-93.)  *See, e.g.,*

*A. Employment Relationship Under the FLSA*

In order to support a cause of action under the FLSA, Plaintiff must show an employment relationship with Chang Lung and establish that: (1) Chang Lung is an employer subject to the FLSA; (2) Plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated sub nom. on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018); *see also* 29 U.S.C. §§ 203, 213 (2019).

The FLSA broadly describes an employer as "any [person or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013). A defendant is an FLSA employer if he or she meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8366837, at *4. The enterprise coverage test considers whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Res. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).

The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo,* 2016 WL

---

*Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *25 n.21 (E.D.N.Y. Sept. 8, 2018), *R&R adopted*, Sept. 25, 2018 (see Docket Order).

8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

The Amended Complaint alleges that Chang Lung "had gross revenues in excess of $500,000.00," and that Chang Lung was an "'enterprise engaged in commerce' within the meaning of FLSA." (Am. Compl. ¶¶ 8, 11, 60.)  At trial, Plaintiff testified that Chang Lung imported tens of thousands of pounds of seafood, including lobster and eel, from Canada, as well as exported seafood to Asia. (Trial Tr. at 31:10-14, 33:4-7.)  Given the international and high-volume nature of Chang Lung's business, the Court finds that operation of Chang Lung's live seafood distribution business with a gross revenue of at least $500,000 involved "materials [that] moved or were produced in interstate commerce." *Fermin*, 93 F. Supp. 3d at 33; *see also* 29 U.S.C. § 203(b).

Accordingly, for the purpose of this default judgment, these allegations and the trial testimony are sufficient to establish that Chang Lung is an enterprise engaged in interstate commerce, and therefore is an employer under the FLSA.

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  The statute protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).  In addition to the well-pleaded allegations in the Amended Complaint, Plaintiff provided a sworn statement and testified that Chang Lung employed him as a deliveryman and warehouse worker. (Li Decl. ¶¶ 2, 3; Trial Tr. at 21:1-2.)  Plaintiff thus falls within the FLSA's definition of "employee."

Plaintiff must show that he is not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32.  An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).  Plaintiff does not fall within an exempted category such as "executive employee," "creative professional," or

"learned professional." *Fermin*, 93 F. Supp. 3d at 32 (citation omitted). Specifically, Plaintiff was not "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise, … and who has the authority to hire or fire other employees…" 29 C.F.R. § 541.100. Accordingly, Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

### B. Employment Relationship Under the NYLL

Plaintiff must show that his employment relationship with Chang Lung falls within the NYLL, which governs "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190 (McKinney). The NYLL broadly defines an employee as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. Law § 651(5). As discussed above, Plaintiff has established that he was an employee.

An employer is any individual or corporation "acting as employer." N.Y. Lab. Law § 651(6). Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *See Saucedo*, 2016 WL 8376837, at *6. The FLSA's definition of "employer" is "nearly identical" to that of the NYLL, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Since Chang Lung is an employer under the FLSA, it is also an employer under the NYLL.

Plaintiff has shown that the NYLL applies.

## C. Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff filed the Complaint on December 5, 2016. Therefore, Plaintiff may recover for FLSA and NYLL violations that occurred during the entirety of his employment with Chang Lung—from July 7, 2016 through September 28, 2016.

## D. Minimum Wage (FLSA and NYLL)

"Pursuant to the FLSA and NYLL, an employee is entitled to at least the minimum wage for the first 40 hours worked per week . . ." *Melgadejo v. S & D Fruits & Vegetables Inc.,* No. 12-CV-6852 (RA) (HBP), 2015 WL 10353140, at *8 (S.D.N.Y. Oct. 23, 2015), *R&R adopted*, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016). "An employee cannot state a claim for a minimum wage violation unless his average hourly wage falls below the federal minimum wage." *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (internal quotations and brackets omitted). "Plaintiff is entitled to recover the higher of the applicable federal or state minimum wage." *Montellano-Espana v. Cooking Light Inc.,* No. 14-CV-1433 (SJ) (RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016).

In New York, the minimum wage between July and September 2016 was $9.00 per hour. N.Y. Lab. Law § 652.[5] The federal minimum wage during the same period was $7.25 per hour. 29

---

[5] New York City did not implement its own minimum wage until December 31, 2016. *See* N.Y. Lab. Law § 652.

U.S.C. § 206(a). An employer may properly withhold taxes from an employee regardless of whether the wages consequently fall below the minimum wage rates. *See, e.g., Widjaja v. Kang Yue USA Corp.,* No. 09-CV-2089 (RRM) (CLP), 2011 WL 4460642, at *5 (E.D.N.Y. Sept. 26, 2011) (quoting *Carver v. City of N.Y.,* 621 F.3d 221, 230 (2d Cir.2010)).

As discussed above, Plaintiff must produce sufficient evidence for the Court to reasonably infer the amount and extent of uncompensated work. Under the NYLL, Chang Lung must prove by a preponderance of the evidence that it properly compensated Plaintiff.

The Court credits Plaintiff's testimony over the allegations in the Amended Complaint and his declaration in support of the Motion, as they differ in the alleged hourly rates and hours worked. Plaintiff testified at trial that he and Zhou agreed that he would be paid $1,600 per month before taxes based on a forty-hour work week, and he was in fact paid at a rate of $1,600 before taxes for both July and August 2016 (this amounted to an after-tax amount of $1,100 at the end of July 2016 for the partial month worked, and a little over $1,400 at the end of August 2016). (Trial Tr. at 20:16-19, 25:9-18, 48:24-49.) Plaintiff's pre-tax salary of $1,600 per month results in an effective hourly rate of $9.23 based on a forty-hour workweek.[6]

Accordingly, for July and August 2016, Plaintiff is not entitled to unpaid minimum wages, because he was compensated at a rate higher than the New York minimum wage rate of $9.00 per hour.

However, Plaintiff alleged he was not paid in September 2016. (Am. Compl. ¶ 19; Li Decl. ¶ 4; Trial Tr. at 20:16-19, 25:19-20.) Plaintiff introduced Zhou's purported payroll records at trial, reflecting payments in September, but Plaintiff alleged and testified that he was not paid. (Trial Tr. at 59:8-18; "Pl. Ex. 1," Dkt. 53-1, at PageID # 565; Am. Compl. ¶ 28.) By defaulting, Chang Lung

---

[6] $1600 x 12 months = annual rate of $19,200/52 weeks = $369.23 per week/40 hours = $9.23 per hour.

cannot rebut this evidence, and the Court credits Plaintiff's testimony. Accordingly, Plaintiff is

entitled to minimum wages of $9.00 per hour for the month of September 2016.[7]

### E.  Overtime (FLSA and NYLL)

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no

less than one and one-half times the regular rate of pay for any hours worked in excess of forty per

week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see*

29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA

definition of overtime into the NYLL). In the Second Circuit, "a plaintiff must sufficiently allege 40

hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours,"

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), providing "sufficient

detail about the length and frequency" of unpaid work in order to support "a reasonable inference"

that she "worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201; *see also Fermin*,

93 F. Supp. 3d at 44-45 (allegations that plaintiff worked over forty hours a week established an

overtime claim).

Plaintiff seeks overtime compensation for every week in which he worked for Chang Lung.

Plaintiff testified that he worked six days a week, from 8:30 a.m. until generally 6:00 p.m. (Trial Tr.

at 21:6-7, 22:5-6, 23:1.) After the first week, Plaintiff then began work at 7:00 a.m. two or three days

per week in order to make earlier trips to the airport. (*Id.* at 21:17-20.) Additionally, two or three

days per week, Plaintiff would work an additional three-to-four hours making airport runs at night.

(*Id.* at 23:3-5, 13-16, 24:2-5.) Accordingly, Plaintiff claimed that, on average, he worked between 60

---

[7] Although Plaintiff's Count XI pleaded violations of NYLL § 191(1-d) for failure to pay agreed-upon wages (Am. Compl. ¶¶ 104-109), he did not pursue this claim in the Motion, instead claiming entitlement to minimum and overtime wages for September 2016. (Pl. Mem. at 13; Ex. 6 to the Kim Decl., Dkt. 32-9.) Plaintiff has therefore abandoned this claim. *See, e.g., Cavalotti*, 2018 WL 5456654, at *25 n.21.

and 61.5 hours per week during the day, plus an additional 6-12 hours in airport runs per week, or between 66 and 73.5 hours, for an average workweek of 69.75 hours.

Accepting Plaintiff's trial testimony that he worked an average of 29.75 hours per week over forty hours, the Court finds that he has established a claim for overtime wages.

### F.  Spread-of-Hours Compensation (NYLL)

Plaintiff alleges that Chang Lung failed to pay him spread-of-hours premiums.  (Am. Compl. ¶¶ 22, 23, 24, 79, 80, 81.)  Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total number of days that the employee worked more than ten hours.  *Id.*  However, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation."  *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019), *R&R adopted* (Docket Order dated Mar. 4, 2019) (citing *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473-74 (E.D.N.Y. 2011)); *see also Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *9 (S.D.N.Y. May 31, 2019), *R&R adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

Based on Plaintiff's testimony, his hourly rate of pay came out to $9.23 throughout his employment, which is above the applicable minimum wage rate.  Accordingly, he is not entitled to spread-of-hours premiums in the months of July and August 2016.  However, Plaintiff is entitled to spread-of-hours pay in September 2016, when he was not paid and is therefore entitled to minimum wages.

### G.  Wage Notice and Wage Statement Violations (NYLL)

NYLL § 195(1) requires employers to give employees a notice stating their rate of pay, how they will be paid, and other information.  Plaintiff testified and alleges in the Amended Complaint

and his declaration that he did not receive wage notices pursuant to Section 195(1).  (Am. Compl. ¶ 25; Li Decl. ¶ 8; Trial Tr. at 33:8-10.)

Section 195(3) requires employers to give employees "a statement with every payment of wages," listing information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3).  Plaintiff testified and alleges that he was not provided wage statements pursuant to Section 195(3).  (Am. Compl. ¶ 26; Li Decl. ¶ 9; Trial Tr. at 33:8-10.)

Accepting Plaintiff's allegations in the Amended Complaint as true, and finding them uncontradicted by his trial testimony, the Court finds that Plaintiff has established Chang Lung's liability for failure to provide wage notices and statements.

### H. Race or National Origin Discrimination (NYSHRL and NYCHRL)

### 1. NYSHRL

Plaintiff, who is Chinese American, brings claims for race or national origin discrimination pursuant to the NYSHRL and NYCHRL.  (Am. Compl. ¶¶ 94-103.)  In order to plead a race or national origin discrimination claim pursuant to the NYSHRL, Plaintiff must "plausibly allege that (1) the employer took adverse action against [him] and (2) [his] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).  The "ultimate issue" in an employment discrimination case is whether Plaintiff can meet his burden of showing that the adverse employment decision was motivated at least in part for a discriminatory reason.  *Id.* at 87.  Plaintiff may allege facts that "directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Id.*  Plaintiff must allege facts that "give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir.

2015); *see also Williams v. Calderoni*, No. 11-CV-3020 (CM), 2012 WL 691832, at \*4 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom. Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

An adverse employment action is one that is "a *materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Littlejohn*, 795 F.3d at 312 (emphasis in original; internal brackets and quotations omitted). Examples include "termination of employment . . ." *Vega*, 801 F.3d at 85. If the decisionmaker's actions or remarks "could be viewed as reflecting discriminatory animus," or if they have given preferential treatment to employees outside of the protected class, an inference of discrimination may be made. Remarks give rise to an inference of discrimination where there is a "nexus between the remarks and an adverse employment decision." *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 436-438 (S.D.N.Y. 2015); *see also Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at \*15 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).

Plaintiff's claim for race or national origin discrimination pursuant to the NYSHRL fails as a matter of law. He failed to allege that he was fired *because* of his race or national origin. The Amended Complaint alleges that Plaintiff was fired for trying to claim his back wages. (Am. Compl. ¶ 31.) At trial, Plaintiff testified that Zhou fired him because he refused to pay for half his parking tickets. (Trial Tr. at 29:2-25.) Although Plaintiff alleges that Zhou called him derogatory names referencing his national origin, such as "Chinese Rubbish," or "Chinese Junk," Plaintiff does not connect this name-calling to his termination from Chang Lung.

Accordingly, even accepting the allegations in the Amended Complaint or Plaintiff's testimony as true, Plaintiff has not shown Chang Lung's liability for race or national origin discrimination claim under the NYSHRL.

### 2. NYCHRL

NYCHRL claims must be analyzed separately from federal and state discrimination claims, considering the totality of the circumstances. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112–13 (2d Cir. 2013). "NYCHRL claims must be construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Marshall v. Kingsborough Cmty. Coll. of Cuny*, No. 11-CV-2686 (PKC) (RML), 2015 WL 5773748, at *12 (E.D.N.Y. July 27, 2015), *R&R adopted*, 2015 WL 5774269 (E.D.N.Y. Sept. 30, 2015) (quoting *Albunio v. City of New York,* 947 N.E.2d 135, 137 (N.Y.2011)) (internal quotations omitted).

The NYCHRL does not require a materially adverse employment action. *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 173 (E.D.N.Y. 2017). Plaintiff must only show that the employer treated him "less well" than other employees, at least in part for a discriminatory reason. *Mihalik*, 715 F.3d at 110 n.8. Nonetheless, the NYCHRL is not a general civility code. *Id.*

Even under the NYCHRL's relaxed standard, Plaintiff failed to allege a race or national origin discrimination claim. The Amended Complaint does not allege that Plaintiff was treated "less well," or even differently from other employees. (Am. Compl. ¶ 31.) Plaintiff testified that Zhou called him names referencing his race or ethnicity, such as "Chinese Junk" or "Chinese garbage," but fails to allege that Zhou treated him less well in part because of his race. (Trial Tr. at 28:5-12.) Plaintiff's testimony that Zhou did not "abuse" the Hispanic workers in "that way" is too vague to sustain a claim that Zhou treated Plaintiff less well because he is Chinese American. (*Id.* 28:13-16.) In fact, Plaintiff testified that "the reason why" Zhou criticized him more severely than other employees, including other workers of Chinese descent, is that Plaintiff was a new employee who didn't understand or want to participate in Zhou's alleged schemes. In addition, Plaintiff testified that Zhou cursed at him when he supposedly "did things wrong," not because of his race or national origin. (*Id.* at 28:1-4, 28:17-29:1.)

Accordingly, Plaintiff has failed to establish a claim for race or national origin discrimination pursuant to the NYCHRL.

## I. Hostile Work Environment (NYSHRL and NYCHRL)

### 1. NYSHRL

Plaintiff brings hostile work environment claims pursuant to the NYSHRL and NYCHRL. (Am. Compl. ¶¶ 94-99.) To establish a claim for a hostile work environment in violation of the NYSHRL, there must be "facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations omitted); *Littlejohn*, 795 F.3d at 320–21; *Fenner v. News Corp.*, No. 09-CV-9832 (LGS), 2013 WL 6244156, at *12 (S.D.N.Y. Dec. 2, 2013). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 320-21.

Whether a workplace is objectively hostile should be analyzed based on the totality of the circumstances. *Patane*, 508 F.3d at 113. "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. . . Ultimately. . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.* at 114 (internal quotations omitted).

"To sustain a claim, plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment

were thereby altered." *Marshall*, 2015 WL 5773748, at *10 (citing *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 187–88 (2d Cir. 2001)). "A plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Fenner*, 2013 WL 6244156, at *13 (internal quotations omitted). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Id.* (internal quotations and citations omitted).

In general, "stray comments" do not create an inference of discrimination. *Giambattista v. Am. Airlines, Inc.*, 584 Fed. App'x. 23, 25-26 (2d Cir. 2014). Where a supervisor makes the comment, however, it could be deemed more "ominous" and may provide sufficient basis for an inference of discrimination, when considered in the totality of the circumstances. *See, e.g., Anyachebelu v. Brooklyn Hosp. Ctr.*, No. 16-CV-3159 (DLI) (VMS), 2017 WL 9511073, at *13 (E.D.N.Y. July 20, 2017), *R&R adopted*, 2017 WL 4233033 (E.D.N.Y. Sept. 22, 2017).

Plaintiff's hostile work environment claim under the NYSHRL fails. Plaintiff testified that Zhou called him names and cursed him, using expletives such as "Chinese Rubbish," "Chinese Garbage," "Chinese Junk," "Dick Head," or "Mother Fucker" on a daily basis. (Trial Tr. at 28:5-12; Li Decl. ¶ 5.) Although these comments are offensive, not all of them are based on race. Plaintiff does not specify how often he was disparaged using a racial, rather than generic, slur. *See Fenner*, 2013 WL 6244156, at *13. Plaintiff has failed to allege or testify that the comments were so

"severely permeated with *discriminatory* intimidation, ridicule, and insult," such that they altered his work environment for the worse. *Marshall*, 2015 WL 5773748, at *10 (emphasis added).

Plaintiff has also not demonstrated that a hostile environment was created because of his protected status as Chinese American. Zhou criticized Plaintiff and called him names when he was not satisfied with Plaintiff's work, or when Plaintiff did not want to participate in Zhou's alleged schemes. (Trial Tr. at 28:1-29:1) Plaintiff testified that Zhou used profane language with all of the employees, but with Plaintiff more severely. (*Id.* at 28:13-29:1.) While the work environment was undoubtedly stressful, Plaintiff has not established liability for a hostile work environment claim based on race or national origin under the NYSRHL.

### 2. NYCHRL

Under the NYCHRL, "the alleged hostile conduct need not be severe or pervasive" to state a claim for hostile work environment. *Boonmalert v. City of New York*, 721 F. App'x 29, 33–34 (2d Cir. 2018). "The severity and pervasiveness of the alleged harassment are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." *Williams v. Rosenblatt Sec. Inc.*, No. 14-CV-4390 (JGK), 2016 WL 4120654, at *3–4 (S.D.N.Y. July 22, 2016) (internal quotations and citations omitted). To prevail on liability, the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). However, a plaintiff still bears the "the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part "because of her [protected class]." *Mihalik*, 715 F.3d at 110 (internal quotations and citations omitted). "Petty slights and inconveniences" are not actionable. *Wilson v. N.Y.P. Holdings, Inc.*, No. 05-CV-10355 (LTS) (DFE), 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009).

Plaintiff's allegations fail to establish that he was treated less well because of his protected status. Although Plaintiff made vague allegations regarding differential treatment of Hispanic employees, he also testified that all employees were insulted. (Trial Tr. at 28:15-29:1.) Plaintiff testified that Zhou's insults referred to his race or ethnicity at least some of the time, but these allegations alone are insufficient to establish that the work environment was created in part because of Plaintiff's race or ethnicity. Plaintiff testified unequivocally that the "reason why" Zhou criticized him more severely than other Chinese American or Hispanic employees was Plaintiff's unwillingness to participate in Zhou's alleged schemes to defraud customers or suppliers, *not* because Plaintiff is Chinese American. (*Id.* at 28:17-21.) While Plaintiff has established that Zhou was an "obnoxious boss," the comments he describes are no more than "petty slights and inconveniences," and his hostile work environment under the NYCHRL fails. *Mihalik*, 715 F.3d at 110; *Wilson*, 2009 WL 873206, at *29.

**V.**     **Damages**

### A. Minimum Wage (NYLL)

Because Plaintiff earned more than the minimum-wage rate in New York in July and August 2016, he is not entitled to minimum wages for those months. He is entitled to minimum wages of $9.00 per hour for the four weeks he worked in September 2016. Accordingly, Plaintiff is entitled to **$1,440** in minimum wages for September 2016.

### B. Overtime (FLSA and NYLL)

Overtime compensation is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. Because Plaintiff's regular hourly rate of pay exceeded minimum wage rates for July and August 2016, his base rate of pay is used to calculate the overtime rate. The minimum wage rate is used to calculate his overtime compensation for September 2016. Plaintiff

testified that he worked an average of 69.75 hours per week throughout his employment, for an average of 29.75 hours of overtime per week. His overtime hours and damages are compiled in the following chart:

| Month | Weeks Worked | Overtime Hours Owed | Overtime Premium Owed |
|---|---|---|---|
| July and August 2016 | 8 weeks | 29.75 x 8 = 238 hours | 238 x $13.85 = $3,296.30 |
| September 2016 | 4 weeks | 29.75 x 4 = 119 hours | 119 x $13.50 = $1,606.50 |

Accordingly, Plaintiff is entitled to **$4,902.80 in overtime damages.**

## C. *Spread-of-Hours Premium (NYLL)*

Since Plaintiff was paid above minimum wage for the months of July and August, the only month in which he is entitled to spread-of-hours premiums is September 2016. Plaintiff did not specify which days he made evening airport runs, adding an additional maximum of four hours each day, three days a week. The Court assumes that Plaintiff made airport runs on the days on which he started work at 7:00 a.m., entitling him to three days of spread-of-hours compensation per week. Since Plaintiff worked all four weeks in September 2016, he is entitled to 12 days of spread-of-hours compensation.

Accordingly, Plaintiff is entitled to **$108 in spread-of-hours premiums**.

## D. *Recordkeeping Violations under NYLL*

### 1. *Wage Notice*

Violations of NYLL § 195(1) mandate damages of $50 per work day, for a maximum of $5,000. N.Y. Lab. Law § 198 (1-b). Because Plaintiff worked 84 days and received no wage notice, Chang Lung is liable in the amount of **$4,200 for its violation of NYLL § 195(1)**.

## 2. Wage Statements

Section 195(3) mandates damages of $250 per work day for violations, up to a maximum of $5,000. N.Y. Lab. Law § 198(1-d). Plaintiff did not receive any wage statements during his 84 days of employment. Accordingly, Chang Lung is liable in the amount of **$5,000 for violation of NYLL § 195(3)**.

## E. Liquidated Damages (FLSA and NYLL)

Plaintiff seeks liquidated damages. Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Chang Lung failed to respond to the Motion, no good faith exists and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015). Liquidated damages are not available for violations of the NYLL wage notice and statement provisions. N.Y. Lab. L. § 198(1-a), (1-d).

Based on Plaintiff's entitlement to **$1,440** in minimum wages, **$4,902.80** in overtime wages, and **$108** in spread-of-hours premiums, Plaintiff is entitled to an award in those identical amounts in **liquidated damages under the NYLL**.

### F. Pre-Judgment Interest

Plaintiff seeks pre-judgment interest on his unpaid wages. *See* N.Y. Lab. L. § 198(1-a) ("In any actions instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover. . . prejudgment interest as required under the civil practice law and rules. . ."); C.P.L.R. 5001(a).

Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16 (citation omitted). The statutory interest rate in New York for pre-judgment interest is nine percent per annum. C.P.L.R. 5004. Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "the earliest ascertainable date the cause of action existed," or a midway point between when the plaintiff began and ended work if damages were incurred at various times. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing C.P.L.R. 5001(b)).

Because Plaintiff was denied adequate wages throughout his employment, the Court will use an intermediate date. The mid-way point between July 7, 2016 and September 28, 2016 is August 17, 2016. Pre-judgment interest on actual combined damages of $6,450.80 (for minimum wages, overtime pay, and spread-of-hours premiums) at a rate of nine percent per annum, is $1.59 per day. For the 1,328 days from August 17, 2016 through April 7, 2020, the date of judgment, the total amount of pre-judgment interest equals $2,111.52. Accordingly, Plaintiff is **awarded pre-judgment interest of $2,111.52.**

### G. Post-Judgment Interest

Plaintiff seeks post-judgment interest. Such interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g.*, *Fermin*, 93 F. Supp. 3d at 53; *see also Canaveral*, 2019 WL 4195194, at *7 (S.D.N.Y. Sept. 5, 2019). Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961. *See Tacuri v. Nithun Constr. Co.* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015). Accordingly, Plaintiff shall be awarded **post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.**

### H. Attorneys' Fees and Costs

Plaintiff seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). District courts have broad discretion to determine the amount awarded, and the party requesting fees must submit documentation to support its claims. *Mahoney*, 2016 WL 6585810, at *18. Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *17. This "lodestar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable client would be willing to pay." *Id.* The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior

associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Mahoney*, 2016 WL 6585810, at *19 (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014)).

Plaintiff requests hourly rates of $350 for Jian Hang and $275 for Philip H. Kim. (Kim Decl. ¶ 26.) Hang is Principal Attorney of Hang & Associates, PLLC, with over 10 years of experience; he practices primarily in the area of employment law, including FLSA claims, and is currently representing wage-and-hour plaintiffs in over 50 lawsuits in federal courts. (*Id.* ¶¶ 26, 28, 29.) The Court finds the requested rate for Hang appropriate; however, Plaintiff provided no information as to Kim's credentials, including how long he has been admitted to practice law. Accordingly, the Court applies an hourly rate of $350 for Hang and $100 for Kim.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Plaintiff's counsel billed a total of 50.5 hours: 28.4 attributed to Hang, 19.6 attributed to Kim, and 2.5 attributed to an unidentified timekeeper, "R. Ma." (*See* Ex. 7 to the Kim Decl., Dkt. 32-10.) The 2.5 hours attributed to "R. Ma" were included in Kim's recorded time, but will not be granted. Several of the time entries are also excessive. For example, on October 28, 2016, Hang billed 2.7 hours to reviewing "case files" and conducting "research." (*Id.*) Plaintiff contends he did not receive any time sheets or pay stubs, so the "case files" would not have been voluminous. (Li Decl. ¶¶ 8, 9; Trial Tr. at 33:8-10.) In addition, on December 1, 2016, Hang billed 4.5 hours of time to researching Chang Lung's corporate status, along with "New York laws and FLSA rules." (*Id.*) As a seasoned practitioner of FLSA cases for over 10 years, the amount of time Hang spent researching a run-of-the-mill FLSA and NYLL case is excessive. Accordingly, these entries will be reduced by half. In addition, Hang billed 2.5 hours to preparing a request for a certificate of default. This amount of time is unreasonable and is therefore reduced to 0.5 hours.

At least one of Kim's time entries is excessive. He billed 3.4 hours to "draft[ing] and fil[ing] the First Amended Complaint," but except for a few changes in the fact section, there is no difference between the original Complaint (Dkt. 1) and the Amended Complaint (Dkt. 15.) This entry is reduced to one hour.

Accordingly, the Court finds that Hang reasonably billed 22.8 hours, and Kim reasonably billed 17.2 hours, affording Plaintiff attorneys' fees of $7,980 ($350 multiplied by 22.8 hours) for Attorney Hang and $1,720 ($100 multiplied by 17.2 hours) for Attorney Kim, totaling $9,700. Accordingly, Plaintiff is entitled to an award of **$9,700 in attorneys' fees.**

Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). Plaintiff requests costs of $478.70, including $400 for filing the complaint, and $78.70 in process service fees. (Kim Decl. ¶ 35; Ex. 8 to the Kim Decl., Dkt. 32-11.) The Court finds the costs reasonable.

Plaintiff is entitled to **$9,700 in attorneys' fees and $478.70 in costs.**

### I. *Increased Judgment in the Event of Defendant's Failure to Pay*

Plaintiff requests that if Chang Lung fails to pay any amount of the damages to which he is entitled within 90 days of issuance of the judgment, the amount of judgment shall be increased by 15%. N.Y. Lab. Law § 663(4); *see also* N.Y. Lab. Law § 198(4). (Am. Compl. *ad damnum* clause.) When a plaintiff's damages are all awarded under the NYLL, applying this automatic increase is appropriate. *See, e.g., Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJR) (LM), 2016 WL 4147143, at *8 (E.D.N.Y. Aug. 4, 2016).

Since Plaintiff's damages are effectively all awarded under the NYLL, an automatic increase in the judgment by 15% shall be entered against Chang Lung should it fail to pay any part of the damages herein within 90 days of the issuance of judgment.

## EFFECT OF JUDGMENT AGAINST ZHOU

The jury found Zhou liable for the same violations under NYLL §§ 195(1) and 195(3), awarding $4,200 and $5,000, respectively. As Plaintiff's employer, Chang Lung is jointly and severally liable with Zhou for these amounts. *Mahoney*, 2016 WL 6585810, at *9 (citing *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011)). Plaintiff is not permitted to recover twice for the same violation, but he may recover these damages under NYLL §§ 195(1) and 195(3) from either Zhou or Chang Lung.

## CONCLUSION

Based on the foregoing, default judgment shall be entered against Chang Lung for violations under the FLSA and NYLL, and Plaintiff shall be awarded damages in the total sum of **$34,391.82**, plus post-judgment interest, comprised of:

    a.  **$1,440** in unpaid minimum wages under the NYLL;

    b.  **$4,902.80** in unpaid overtime compensation under the NYLL;

    c.  **$108** in unpaid spread-of-hours premiums under the NYLL;

    d.  **$6,450.80** in liquidated damages under the NYLL;

    e.  **$4,200** pursuant to NYLL § 195(1);

    f.  **$5,000** pursuant to NYLL § 195(3);

    g.  **$2,111.52** in pre-judgment damages;

    h.  **$9,700** in attorneys' fees; and

    i.  **$478.70** in costs.

Plaintiff is directed to serve this Memorandum & Order on Chang Lung forthwith and file proof of service in the docket by **April 14, 2020**.

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          April 7, 2020